# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | Case No. 24-cr-039-APM |
| | : | |
| **BRANDON TYRIQ WHITE** | : | |
| | : | |
| **Defendant.** | : | |

## SUR-REPLY IN OPPOSITION TO GOVERNMENT'S MOTION TO ADMIT 413 AND 404(b) EVIDENCE

Defendant Brandon White ("Mr. White"), by and through his counsel, Michael E. Lawlor, Adam C. Demetriou, and Brennan, McKenna & Lawlor, Chtd., respectfully submits this Sur-Reply to the Government's reply in support of its motion to admit Rule 413 and Rule 404(b) evidence (ECF No. 32). The morning after Mr. White submitted his opposition (ECF No. 28) to the Government's original 413 and 404(b) motion (ECF No. 14), the Government disclosed *Brady* information that it had received several days earlier. This information erodes the Government's proffer in support of the admissibility of an uncharged, unsubstantiated allegation of sexual assault that it contends occurred on some unnamed date approximately one week before the charged conduct. Moreover, the newly disclosed information establishes that MB has engaged in deceptive conduct and fabrication of evidence in communications regarding her relationship with Mr. White, thereby rendering even

1

more inappropriate the Government's request to admit selected portions of MB's Instagram messages with individuals other than Mr. White. For these additional reasons, the Court should deny the Government's motion to admit 413 and 404(b) allegations.

## I. Introduction

On October 17, 2024, the Government filed a motion for 404(b) and 413 evidence.[1] (ECF No. 14.) In that motion, the Government sought rulings admitting the following: (1) the uncharged allegation that Mr. White sexually assaulted MB at a Super 8 hotel on an unnamed date approximately one week before December 18, 2023; (2) a host of nebulous allegations that Mr. White, on various unnamed occasions, acted in an abusive or controlling manner towards MB; (3) false (and now withdrawn) evidence that Mr. White called MB from the Prince George's County Detention Center in an effort to get her to recant her account; and (4) selected screenshots from MB's Instagram messages purportedly depicting communications between MB and Mr. White's sister. Apart from the Instagram screenshots and the withdrawn jail calls, the Government supplied no evidence in support of its factual

---

[1] The Government was due to file its 404(b) motion on October 11, the same day it made its deficient expert disclosures. The Government did not seek leave to late file its 404(b) motion. However, Mr. White did not and does not oppose the motion on timeliness grounds. Ultimately, the briefing schedule was delayed as a result of the Government's failure to make timely expert notices under Rule 16 and the Court's Pretrial Order.

proffers. On December 16, 2024, Mr. White filed a response. (ECF No. 28.) The next day, the Government disclosed FBI 302 reports and attendant handwritten notes related to meetings with MB on December 5 and December 11, 2024. On December 23, 2024, the Government filed a reply in support of its 413 and 404(b) motion. (ECF No. 32.) In support of the reply, the Government attached several sealed exhibits containing or otherwise memorializing some of MB's various statements throughout the investigation. The Government made no specific argument concerning the content of the December 5 and December 11 statements and did not alert the Court that MB had discussed the alleged Super 8 incident in her December 11 statements. That same day, Mr. White notified the Court that he intended to file a sur-reply to the Government's filing at ECF No. 32.[2]

A pretrial conference is set for January 3, 2025. A jury trial is set to begin on January 13, 2025.

## II. The Government's Conduct with Respect to the False Jail Calls is Relevant and Troubling

The Government argues that its erroneous request to admit four jail calls as evidence of Mr. White's attempt to coerce MB into recanting has no bearing on any live issue in this case. The Government is wrong. In considering a request to admit allegations of other bad acts, courts consider the reliability of such allegations. *See*

---

[2] Mr. White is also filing a motion for leave to file a sur-reply.

3

*United States v. Siegel*, 536 F.3d 306, 317 (4th Cir. 2008); *compare United States v. Powers*, 59 F.3d 1460, 1467 (4th Cir. 1995) (citing *Huddleston v. United States*, 485 U.S. 681, 689 (1988)) (holding that evidence of a defendant's prior acts of domestic violence towards a victim and certain family members was sufficiently reliable where *three eyewitnesses* to the acts independently testified to the defendant's conduct and the witness' accounts confirmed each other's testimony). Where, as with respect to the uncharged allegations of sexual assault and abusive conduct at issue in this case, (1) the only evidence of the allegations comes in the form of a single witness' statements to Government investigators and (2) there is no independent evidence to corroborate the other bad acts the Government seeks to admit, it is appropriate for a court to consider the nature of the investigation that gave rise to the allegations.[3] Evidence that an investigation was cursory, flawed, or produced false allegations is relevant in considering the reliability and admissibility of evidence of other crimes generated by the same investigation.

In its reply, the Government offers no apology to the Court or Mr. White for the false statements presented in its 404(b) motion.[4] On the contrary, as it did with respect to its failure to comply with its expert disclosure obligations, the Government

---

[3] As discussed below, based on MB's recent statements, it appears that the nature of the Super 8 allegation has changed significantly.

[4] It is motion to withdraw the request to admit the four jail calls (ECF No. 26), the Government did not even inform the Court of the reason behind its decision to retreat from these serious and inflammatory accusations.

places the blame on Mr. White. The Government appears to chide counsel for not informing it that Mr. White was not the caller in the debunked jail calls. A defendant in a criminal case has no obligation to check in with the Government and alert it to its mistakes. The process works as follows: the Government pursues charges and offers evidence to meet its high burden and the defendant then confronts that evidence and, if he so chooses, presents evidence of his own, within the confines of the adversarial system. A criminal defendant is not enlisted to the Government's service as a fact checker. Under the Government's logic, every federal criminal case would be dismissed at the arraignment stage, at which every criminal defendant enters a plea of not guilty. While the Government takes a passing shot at Mr. White for allegedly violating the telephone policies of a local detention center in Maryland – policies that are not within the Government's jurisdiction to enforce, the Government makes no effort to explain to this Court the process that led to the presentation of false evidence and argument in its 404(b) motion.

As Mr. White explained in his response, had the Government conducted a reasonable investigation, it would have been clear that Mr. White and MB were not the speakers on the calls. The Government did not bother to play the calls for MB until December 11, 2024.[5] The Government did not bother to ask MB whether she

---

[5] In its email to counsel on December 11, 2024, the Government stated that MB "indicated that the female on the line was not her and, the quality of the call was poor, but she could not tell if the male on the call was Brandon or not." However, in

5

recognized the -8050 number to which the calls were placed. The Government received MB's phone records on the very day it filed the 404(b) motion. The Government received Mr. White's phone records in early November. The Government waited until December 11 to check whether the -8050 number was present in either set of phone records. The Government's excuses ring hollow. This Court can and should consider the Government's conduct in assessing the reliability of the investigation that gave rise to the uncharged allegations the Government seeks to admit at this trial.

### III.  MB's December 11 Interview: Delayed *Brady* Disclosure

The Government seeks to introduce at trial the uncharged, unsubstantiated allegation that, on an unnamed date approximately one week before December 18, 2023, Mr. White sexually assaulted MB at a Super 8 hotel in Alexandria. Despite having previously provided a number of statements to law enforcement, MB made this claim for the first time in a January 10, 2024 interview with the Government. The Government's proffer in support of the admission of this allegation relies

---

a 302 memorializing the interview, an agent represented that MB stated that "[t]he recorded voice that said 'Brandon' *at the beginning* sounded like White, but the *voice during the call did not sound like him*." Gov. Ex. 10 to ECF No. 32 (emphasis added). In handwritten notes, the agent recorded as follows: "Voice that said 'Brandon' sounded like him, but voice during call didn't sound like him. Voice was not hers." The agent also quoted MB as saying "Definitely not me." The notes also reflect as follows: "Didn't sound like him."

6

entirely on (1) MB's statements of January 10, 2024 and (2) hotel records showing that Mr. White rented a room at a Super 8 hotel from the evening of December 12, 2023 into December 13, 2023.[6] As the Government implicitly concedes, there is no independent evidence to corroborate that any such sexual assault occurred. In an interview on December 11, 2024, MB made additional statements concerning the alleged events at the Super 8. The Government disclosed these exculpatory statements for the first time on December 17, 2024. Despite attaching a 302 memorializing the December 11 interview to its reply, the Government offered no discussion of the statements contained in it. MB's December 11 interview statements are materially inconsistent with her January 10 statements. The December 11 statements reflect that no sexual assault occurred. On this record, the Government has failed to satisfy the requirements of Rule 413 and Rule 404(b). The Government's motion to admit this uncharged allegation should be denied.

To place MB's new statements in context, Mr. White will recite the Government's proffer in support of admitting the uncharged allegation of sexual assault. The Government alleges that that MB left Mr. White in November 2023 when she moved out of Mr. White's home. (ECF No. 14 at 3.) The Government claims that when MB left, she took only a small portion of her belongings so that

---

[6] The records *do not* indicate that any sexual assault occurred. The Government has supplied no surveillance footage or reports of disturbances from the hotel at issue.

Mr. White would not know she was leaving him. (*Id.*) In December 2023, MB sought to communicate with Mr. White to retrieve her belongings. (*Id.*) On an unnamed date approximately one week before December 18, the Government alleges that MB met with Mr. White in person to discuss the return of her property. (*Id.*) Mr. White drove MB to a Super 8 hotel in Alexandria. (*Id.* at 9.) "Once in the room, MB felt pressured to have sex with the defendant and began to do so. During sex, the defendant penetrated MB anally. MB told the defendant to stop, but he continued to penetrate her anally against her will." (*Id.* at 9.) MB attempted to leave the room, but Mr. White became upset, pinned her down on the bathroom sink, and began choking her from behind. (*Id.*) MB "convinced" Mr. White to drive her home by stating that she needed to leave to attend to her child. (*Id.* at 10.) While leaving the hotel, MB allegedly noticed that Mr. White had secured the door with zip ties. (*Id.*) MB met up with Mr. White again – this time on December 18 – to discuss getting her belongings back.

The Government's proffer would leave any reader with the impression that after MB left Mr. White, she communicated with him solely for the purpose of retrieving her property and met with him on only two occasions for that same purpose. Under the Government's theory, one meeting resulted in the uncharged sexual assault at the Super 8 hotel, and the other meeting resulted in the conduct giving rise to the Indictment. According to MB's December 2024 statements, that

8

impression is false. In an interview on December 5, MB told the Government that she met with Mr. White "several times" after she left him. MB also stated that after she moved out from Mr. White's home, she lied to him and told him that she was pregnant. Indeed, MB told the Government that after she moved out of Mr. White's home, she sent him "a picture of an old pregnancy test to convince him she was pregnant." MB discussed having participated in phone and FaceTime calls with Mr. White – all in the period after she moved out. According to a 302 and handwritten notes, in an interview on December 11, MB recounted that after she moved out of Mr. White's home, she had conversations with Mr. White in which she told him that she loved her boyfriend and had love for Mr. White but did not love him. MB clarified that she may have in fact told Mr. White that she loved him.

  Moreover, on December 11, MB told the Government that it was possible that she "may have had sexual contact with White one or two times after she left White, other than the incident at the Super 8." These statements cast doubt on the reliability and completeness of the Government's proffer. Contrary to the Government's recitation, it would appear that MB now claims to have had a number of communications and meetings with Mr. White after moving out of his home separate and apart from December 12 and December 18 and indeed unrelated to any desire to retrieve her belongings. Critically, MB – the sole source of the allegation of sexual

9

assault – now admits that she *lied* to Mr. White about being pregnant, going so far as to send him false evidence in the form of a photograph of a pregnancy test.

There is more. In the December 11 interview, MB provided a number of statements about the Super 8 allegation. Now, MB claims that once she and Mr. White arrived at the hotel, she sat in a chair near a corner while Mr. White sat near a TV and prepared to smoke marijuana. In other words, it is not the case that Mr. White immediately seized upon MB in the hotel room and forced himself on her. MB now states that she "was being an asshole" to Mr. White in an effort "to push his buttons." This does not read like the conduct of a person who was being held against her will and felt forced to comply with demands out of fear of violence.

On December 11, MB stated that she "was participating" in vaginal sex. With respect to anal sex during the alleged Super 8 incident, in an interview with MB on January 10, 2024, an agent reported that "White began to have anal sex with [MB]. [MB] told White that she did not want to have anal sex but White continued to penetrate her anally against her will." Handwritten notes from January 10, 2024 reflect as follows: "Inside the hotel, he has anal sex with her after she told him not to." On December 11, however, MB reported that after Mr. White penetrated her anally, she told him to "get out" and quickly got up. Indeed, MB now reports that Mr. White remained inside of her for only *a moment* after she expressed that she did

not want to engage in anal sex.[7] These statements are irreconcilable with the January 10 claim, repeated in the Government's motion, that Mr. White *continued* to penetrate MB anally against her will.

    On January 10, MB stated that Mr. White started physically fighting her once she attempted to leave the hotel room. Now, MB states that after she got up from the bed, Mr. White extended his hand, at which point MB hit Mr. White in the face. MB now states that Mr. White began choking her but does not claim, as she did on January 10, that she and Mr. White fell backwards onto the floor. With respect to the zip ties, on January 10, MB stated that she noticed them only as she and Mr. White were leaving the hotel room. Now, MB claims that she saw them while Mr. White physically assaulted her. On January 10, MB claimed that she was only able to secure her release after telling Mr. White that she needed to return to her daughter and would be locked out if she did not return soon. On December 11, however, MB stated that after the alleged physical assault, she and Mr. White remained at the hotel for someone unknown amount of time. MB further stated that she lay with Mr. White on the hotel bed for an unknown amount of time before leaving the hotel room. Again, the recent statements are not consistent with the Government's theory that Mr. White only took MB home after she begged and pleaded that she urgently

---

[7] In the January 10 interview, MB confirmed that she and Mr. White did at times engage in consensual anal sex.

11

needed to return to her daughter. The Government did not seek to amend its 404(b) and 413 notices on the basis of these new statements.

**IV.     The Sexual Assault Allegation is Inadmissible**

In light of this new information, it is even more apparent that the Government has not met its burden to establish the conditional relevance of the uncharged allegation of sexual assault. There is no reliable evidence to establish that the sexual assault occurred. MB has now admitted that at the time period at issue in this case, she lied to Mr. White about being pregnant. MB has told the Government that she has published on social media erotic stories that "were fictional but were based in part on actual experiences." Perhaps this allegation falls into that category. There is simply no way to know because the Government has failed to offer *any evidence* of the alleged assault apart from MB's evolving accounts, the most recent of which demonstrates that no sexual assault occurred.[8] In its reply, the Government offers no discussion of the substance of MB's December 11 statements. That fact alone should give this Court great pause when considering whether to exercise its discretion and admit an uncharged, uncorroborated allegation of sexual assault.[9]

---

[8] For that reason alone, the allegation is not admissible under Rule 413, which applies only to allegations of sexual assault.

[9] As noted elsewhere, theses statements were not disclosed to Mr. White until *after* he filed his response to the Government's 413/404(b) motion.

What the Government has provided is a series of citations to cases that are factually dissimilar to this case. In *United States v. Oldrock*, 867 F.3d 934 (8th Cir. 2017), the defendant was charged with sexually abusing H.L., his nephew's minor daughter, as she attempted to sleep. In the course of a separate investigation, authorities interviewed T.O., a minor child, who indicated that the defendant inappropriately touched her while she was sleeping at a house where the defendant had been living at the time. The Government sought to admit T.O.'s uncharged allegation at trial. The defendant sought to exclude T.O.'s testimony in part on the grounds that T.O. had given inconsistent accounts across her statements. For example. T.O. initially stated in a forensic interview that the defendant touched her thigh but later stated in a witness preparation meeting that he touched her genitals.

Before ruling on the admissibility of the testimony, the district court held an evidentiary hearing. At the hearing, T.O. explained she failed to tell the truth in her initial statement because she was angry at circumstances that led to the arrest of her parents and the placement of her siblings in the custody of protective services. The district court admitted T.O.'s testimony and the Eighth Circuit affirmed. In *Oldrock*, the charged victim and uncharged victim offered testimony that the defendant had sexually abused them under similar circumstances – while they, both minor females at the time, attempted to sleep at a home in which the defendant was residing. There is no indication from the appellate opinion that H.L. and T.O. were aware of each

13

other's allegations at the time each first reported the abuse. In other words, while T.O.'s credibility was subject to serious challenge, the accounts of T.O. and H.L. *corroborated one another*.[10] Moreover, before admitting this prejudicial testimony, the district court held a hearing at which T.O. testified. Here, there is *no evidence* to corroborate MB's account of the alleged Super 8 assault. This Court is left with only MB's inconsistent and uncorroborated statements.

Similarly, in *United States v. Porter*, 562 F. Supp. 3d 1162 (E.D. Cal. 2022), a district court admitted testimony concerning an uncharged sexual assault from a separate victim who described having been sexually assaulted under circumstances similar to those at issue in the charged conduct. For example, both the charged and uncharged victims described strangulation, anal penetration, and methods of immobilization. The district court ruled that testimony from the uncharged victim would tend to corroborate the charged victim's anticipated trial testimony. Notably, the district court also concluded that the fact that the proffered 413 allegation had never been charged weighed *against* the admissibility of the testimony at issue. 562 F. Supp. 3d at 1171. In Mr. White's case, however, there is no other victim who corroborates MB's account of the uncharged sexual assault at the Super 8 – an allegation MB only made *after* having given several interviews to law enforcement.

---

[10] Additionally, the *Oldrock* defendant had a prior federal conviction for sexual abuse of a minor.

14

MB's statements concerning the Super 8 allegation are not even consistent with one another.

In *United States v. Perez*, 662 F. App'x 495 (9th Cir. 2016), the defendant, a former police officer, was charged with several counts of deprivation of rights under color of law. The Ninth Circuit's unpublished opinion contains limited factual background. However, as the Government's appellate brief[11] makes clear, one count related to the defendant's abuse of a victim identified as T.M., and three other counts related to the defendant's abuse of a victim identified as M.R. Under Rule 413, the Government sought to admit evidence of an uncharged attempted sexual assault against X.C. The district court ultimately admitted the uncharged allegation of the attempted sexual assault of X.C. In so ruling, the district court noted that the Government's proffer established that as with the victims alleged in the indictment, the defendant approached X.C. in the middle of the night while in uniform and in a patrol car. As with the victims alleged in the indictment, the defendant isolated her and pressured her to have sex with him. Additionally, the district court concluded that evidence of X.C.'s allegation met the necessity prong of the 413/404(b) analysis because it tended to corroborate the accounts of the victims in the charged conduct.[12] The Ninth Circuit conducted its own analysis and concluded that the district court

---

[11] Available at 2016 WL 1003368.
[12] The district court's ruling is contained within the record extracts filed on the Ninth Circuit docket.

had not abused its discretion. To reiterate, in Mr. White's case, there is *no witness or evidence* to corroborate MB's account of the alleged Super 8 assault. And in light of MB's new statements, it is clear that the Super 8 allegation is not similar to the allegations at issue in the charged conduct.

The uncharged allegation of sexual assault fails the requirements of both Rule 413 and Rule 404(b). There is simply not sufficient reliable evidence to establish the conditional relevance of the allegation – to the extent the nature of the allegation can even be discerned. Indeed, it is wholly unclear that MB even alleges that any sexual assault took place. As to the 404(b) analysis, the Government has still failed to offer a cogent non-propensity argument for the admissibility of this allegation. For example, the Government argues that Mr. White's "prior abusive and controlling behavior explain why M.B. tried to remove herself from dangerous encounters with him by talking him down or running, rather than via direct confrontation." Yet the Government fails to account for M.B.'s new statement in which she indicated that it was "possible, though not certain," that she "may have had sexual contact" with Mr. White "one or two times" after she left him – *apart* from the Super 8 incident. There is no claim that any sexual assault occurred on those one or two occasions. The Government also fails to address M.B.'s statement that she allegedly engaged in direct confrontation with Mr. White at the Super 8 hotel when *she* struck him in the face. Puzzlingly, the Government also argues that "prior instances of abuse will also

16

rebut any claim by the defendant that the victim's injuries came from consensual rough sex, rather than assault and rape, because they demonstrate his intent to harm her." (ECF No. 32 at 10.) But the Government ignores that MB has stated that the bruises on her neck came from abuse at the hands of someone *other* than Mr. White. The Government's collection of undeveloped 404(b) arguments do not survive even minimal scrutiny. There is no basis in fact for this evolving allegation, which appears to have morphed from sexual assault to something else.

The allegation also fails the test of Rule 403. As an initial matter, there is no probative value whatsoever to an allegation that has changed so much from the Government's initial proffer that it is no longer recognizable.[13] But the certainty of unfair prejudice to Mr. White is manifest. The Government seeks to portray Mr. White as a serial sexual abuser of MB on the basis of uncharged, ever-changing allegations for which there is no support. Mr. White cannot be expected to hit a moving target. The Court should deny the Government's motion.

---

[13] Under these circumstances, the admission of this allegation would violate Mr. White's right to due process as he does not have fair notice of the uncharged allegation against which the Government seeks to force him to defend.

## V. The Instagram Messages

In light of the fact that MB has now *admitted* that she *lied* in electronic communications by stating that she was pregnant and sending a photograph of an old pregnancy test, it is all the more imperative that the Government not be permitted to offer MB's Instagram messages given that it has failed to produce the entirety of MB's communications over the platform from the relevant timeframe. The Government has still failed to articulate the relevance of evidence that individuals other than Mr. White communicated with MB. And given that the Government has unfortunately reaffirmed the argument it presented in support of the admission of false evidence of obstruction (ECF No. 32 at 11, incorporating by reference ECF No. 14 at 22-25), the Court should deny the Government's request.

## CONCLUSION

For the reasons set forth in Mr. White's opposition (ECF No. 28) and as explained above, the Court should deny the Government's 413 and 404(b) motion.

                                        Respectfully submitted,

                                        _____/s/_____
                                        Michael E. Lawlor
                                        Adam C. Demetriou
                                        Brennan, McKenna & Lawlor, Chtd.
                                        6305 Ivy Lane, Suite 700
                                        Greenbelt, Maryland 20770
                                        (301) 474-0044

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of December, 2024, the foregoing was served on all parties via ECF.

                                                        _____/s/_____
                                                        Michael E. Lawlor