UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : CRIMINAL NO. 24-CR-39 (APM) |
| v. | : |
| BRANDON TYRIQ WHITE, | : |
| Defendant. | : |

## STATEMENT OF OFFENSE IN
## SUPPORT OF DEFENDANT'S PLEA OF GUILTY

The United States of America, by its attorney, the United States Attorney for the District of Columbia, and defendant Brandon Tyriq White ("White" or the "defendant"), by and through counsel, respectfully submit the following Statement of Offense in Support of Plea of Guilty by the defendant to Kidnapping, in violation of 18 U.S.C §§ 1201(a)(1).

### *Penalties*

Your client understands that a violation of Kidnapping, 18 U.S.C. § 1201(a)(1), carries no mandatory minimum sentence a maximum sentence of life imprisonment; a fine of $250,000 or twice the pecuniary gain or loss of the offense, pursuant to 18 U.S.C. § 3571(b)(3); a term of supervised release of not more than five years, pursuant to 18 U.S.C. § 3583(b)(1); and an obligation to pay any applicable interest or penalties on fines and restitution not timely made.

### *Elements of the Offense*

The essential elements of the offense of Kidnapping, in violation of 18 U.S.C. § 1201(a)(1), are:

1. The defendant seized, confined, inveigled, decoyed, kidnapped, abducted, or carried away M.B.; and
2. The defendant held M.B. for ransom, reward, or other benefit or reason; and

3. M.B. was transported in interstate or foreign commerce; or the defendant traveled in interstate or foreign commerce or used the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense; and

4. The defendant acted unlawfully, knowingly, and willfully.

## Factual Proffer

The following proffer of the government's evidence is intended only to provide the Court with enough evidence to satisfy the mandate of Rule 11(b)(3) of the Federal Rules of Criminal Procedure. This proffer is not intended to be a disclosure of all the evidence available to the United States.

Had this matter gone to trial, the government's evidence would have shown, beyond a reasonable doubt, the following:

In 2023, the defendant and M.B. were in a romantic relationship, and they lived together at the defendant's residence in October and November of 2023. In November of 2023, M.B. left the defendant due in part to his physically abusive behavior towards her. When M.B. left the defendant's residence, she did not tell him she was moving out, and only brought with her a small bag containing some of her belongings. Following her departure, M.B. terminated their relationship, but the defendant still had M.B.'s belongings at his residence. In December of 2023, M.B. sought to recover her belongings by meeting up with the defendant in person to discuss the return of her property. The two settled on a Ruby Tuesday restaurant in Prince George's County, Maryland, and met on the evening of December 18, 2023.

While at Ruby Tuesday, they sat at a table and ordered drinks and food. At some point, M.B. stepped away to take a phone call. She returned to the table to find the food gone, and that

the defendant had paid the bill and left the restaurant. M.B. texted the defendant that she was headed to another store and began walking through the parking lot outside of Ruby Tuesday. In the parking lot, the defendant approached M.B. in his car and the two got into an argument regarding M.B. taking the phone call during their meeting. As the argument intensified, the defendant forced M.B. against her will into the back of the car. M.B. tried to escape, but the defendant stopped her by grabbing her and ultimately binding her hands with zip ties. He then drove her from Maryland to a residence in Southeast, Washington, D.C.

Once they arrived in D.C., M.B. again tried to escape by running away from the defendant and calling out for help. He caught her and forced her onto the front steps of the home. There, the defendant used his hands and arm to apply pressure to M.B.'s throat, making it difficult for her to breath. The defendant only released M.B. when she agreed that she would not scream or run. The defendant then led M.B. into the home to a bedroom on the second floor. While inside the bedroom, the defendant forcibly penetrated M.B.'s mouth with his penis against her will. M.B. tried to get away but the defendant held her still, on her knees, while he forced her to perform oral sex. He then made M.B. lay on the bed where he forcibly penetrated her vagina with his penis against her will. During these events, the defendant was armed with or had readily accessible a firearm, which he placed on the bedside table.

After the sexual assaults and following repeated pleas with the defendant regarding an urgent work assignment, M.B. convinced the defendant to drive M.B. back to Maryland. The defendant agreed on the condition that she return to him later that night. As the defendant drove M.B. from Washington, D.C. to Prince George's County, Maryland, M.B. convinced the defendant to stop at a 7-11 in Maryland so that she could make a purchase. M.B. tried to escape while she was in the 7-11, but the defendant again prevented her from leaving. He followed her into the 7-

11 and, when the two were by his car outside, he again tried to force her back into his car. Surveillance footage from the 7-11 captured the defendant attempting to push M.B. into his vehicle, and her escape. When M.B. tried to escape on foot, the defendant chased her down and ultimately caught her. He assaulted her, breaking her front tooth in half. Ultimately, M.B. was able to escape. The defendant then fled in his car.

M.B. was treated by Prince George's County Emergency Medical Services on scene, and later went to a hospital where she underwent emergency medical treatment and received a Sexual Assault Nurse Examination (SANE), commonly known as a "rape kit." M.B. had numerous injuries, including 1) lacerations and bruising to her wrists; 2) bruising to her legs, buttocks, hip, chest, and arms; 3) bruising and lacerations to her throat; 4) petechia – an indication of bleeding under the skin – to her throat and mouth; 5) a broken tooth and bruising and bleeding to her lip; and 6) a laceration to the perineal region of her genitals. Evidence at trial would have established that the injuries to M.B., particularly the defendant applying pressure to her neck outside of the D.C. residence until she saw stars caused a substantial risk of death, as it prevented the regular flow of blood and air in her body.

As part of the SANE, M.B. consented to have swabs of her body taken for potential DNA evidence, to include vaginal/cervical swabs, neck swabs, and external genitalia swabs. Later testing revealed that the DNA obtained from the vaginal/cervical swabs is consistent with a mixture of two individuals to include M.B. and a male contributor. The sperm fraction from the sample is at least 600 septillion times more likely to be observed if it originated from the defendant than if from an unknown, unrelated individual. The DNA obtained from the neck swabs was also consistent with a mixture of two individuals, to include M.B. and a male contributor. Assuming a mixture of two individuals, the DNA profile obtained is at least 3.8 billion times more likely to be

observed if originated from the defendant and M.B. than from M.B. and one unknown, unrelated individual. Finally, the DNA obtained from the external genitalia swabs was consistent with a mixture of two individuals – M.B. and a male contributor. The DNA obtained from the sperm fraction from this sample is at least 2.9 septillion times more likely to be observed if it originated from the defendant than if from an unknown, unrelated individual. After M.B. was treated at the emergency room that night for her injuries, she had to go to a dentist to have her front tooth, which was split in half, repaired.

When the defendant was arrested on December 23, 2023, in Charles County, Maryland, police recovered his firearm from the hotel where he was staying. The gun was registered to the defendant in the state of Maryland, but the defendant had no valid license or registration to carry the gun within the District of Columbia, to include to the D.C. residence where he took M.B. on the night of December 18, 2023. The gun is a Glock Semi-Automatic firearm bearing serial number BUAT528.

When the defendant sexually assaulted M.B. he did so by placing M.B. in reasonable fear that M.B. would be subjected to death, bodily injury, or kidnapping if she did not engage or submit to the sexual acts. The defendant's actions were voluntary, on purpose, and not by mistake or accident. The defendant did not act in self-defense, and he had no legal justification for his actions.

Respectfully submitted,

EDWARD R. MARTIN, JR.
UNITED STATES ATTORNEY

By:   */s/ Meredith E. Mayer-Dempsey*
Meredith E. Mayer-Dempsey
Assistant United States Attorney

DEFENDANT'S ACKNOWLEDGMENT

I, Brandon Tyriq White, have read this Statement of Offense and carefully reviewed every part of it with my attorney. I am fully satisfied with the legal services provided by my attorney in connection with this Statement of Offense and all matters relating to it. I fully understand this Statement of Offense and voluntarily agree to it. No threats have been made to me, nor am I under the influence of anything that could impede my ability to fully understand this Statement of Offense. No agreements, promises, understandings, or representations have been made with, to, or for me other than those set forth above.

Date: 2/14/25

Brandon Tyriq White
Defendant

ATTORNEY'S ACKNOWLEDGMENT

I have read every page constituting the government's proffer of evidence related to my client's guilty plea. I have reviewed the entire proffer with my client and have discussed it with him fully. I concur in my client's agreement with and acceptance of this proffer.

Date: 2/14/25

Michael Lawlor
Adam Demetriou
Attorneys for Defendant